**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TRAVELERS COMMERCIAL | ) | |
| CASUALTY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:12 CV 1550 DDN |
| | ) | |
| SIELFLEISCH ROOFING, INC. et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This action is before the court on motions of defendants Sielfleisch Roofing, Inc., Mark Sielfleisch, and Lynette Guignard to dismiss and for summary judgment against plaintiff Travelers Commercial Casualty Company. (Docs. 38, 40.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 19.) The court heard oral argument on January 3, 2014.

## I. BACKGROUND

On August 8, 2012, plaintiff Travelers Commercial Casualty Company commenced this action against defendants Sielfleisch Roofing, Inc., Mark Sielfleisch, and Lynette Guignard. (Doc. 1.) According to the complaint, the following occurred. On July 28, 2009, plaintiff filed suit against Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance and Repair, Inc. in Missouri state court to recover unpaid insurance policy premiums. (Id. at ¶ 12.) On December 9, 2010, the court awarded plaintiff damages in the amount of $145,412.83. (Id. at ¶ 14.) On February 15, 2011, counsel for Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance and Repair, Inc. e-mailed plaintiff's counsel, stating for the first time that neither corporation had actively conducted business for several years and that the value of their aggregate assets was $25,000. (Id. at ¶ 21, Doc. 1-1.)

Accordingly, plaintiff alleges successor liability and piercing the corporate veil against defendant Sielfleisch Roofing, Inc. (Id. at ¶¶ 26-48.) Plaintiff further alleges against all

defendants actual and constructive fraudulent transfer, tortious interference with business expectancy, and negligent misrepresentation.  (Id. at ¶¶ 49-98.)

## II.  MOTION FOR SUMMARY JUDGMENT

Defendants move to dismiss, arguing that successor liability requires a transfer of assets, that Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance and Repair, Inc. transferred no assets to defendant Sielfleisch Roofing, Inc., and that defendant Sielfleisch Roofing, Inc. is not a mere continuation of those corporate entities.  Defendants also argue that Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance and Repair, Inc. did not own defendant Sielfleisch Roofing, Inc.  Further, defendants argue that the statute of limitations bars plaintiff's fraudulent transfer claims.  Additionally, defendants argue that any alleged asset transfer did not cause the refusal to pay the state court judgment.  Defendants further argue that they owed no duty to inform plaintiff and that after 2004, they made no representations regarding the business activities of Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance and Repair, Inc.

Plaintiff responds that successor liability does not require transfer of assets and that the transfer of assets is a disputed fact issue.  It also responds that the elements of piercing the corporate veil are satisfied.  Further, plaintiff replies that the disputed timing of the transfer of assets does not allow for a determination regarding the statute of limitations.  Additionally, plaintiff responds that a transfer of assets caused the refusal to satisfy the state court judgment. Plaintiff further responds that the duty to inform arose due to representations made by counsel for Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance and Repair, Inc.

The parties' arguments regarding the motion to dismiss address plaintiff's claims of piercing the corporate veil and negligent misrepresentation.  Because these arguments are also included in their arguments regarding the motion for summary judgment, the court need not separately consider the motion to dismiss.

## III.  SUMMARY JUDGMENT STANDARD

The court must grant summary judgment when the pleadings and the proffered evidence demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322

(1986). A fact is "material" if it could affect the ultimate disposition of the case, and a factual dispute is "genuine" if there is substantial evidence to support a reasonable jury verdict in favor of the nonmoving party. <u>Rademacher v. HBE Corp.</u>, 645 F.3d 1005, 1010 (8th Cir. 2011). The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. <u>Scott v. Harris</u>, 550 U.S. 372, 379 (2007).

## IV. FACTUAL BACKGROUND

The following material facts are without genuine dispute. Plaintiff is a stock insurance company with Connecticut as its principal place of business and state of organization. (Doc. 1 at ¶ 2; Doc. 35 at ¶ 1.) Defendant Sielfleisch Roofing, Inc. is a corporation organized under Missouri law with its principal place of business in Missouri. (Doc. 1 at ¶ 3; Doc. 35 at ¶ 3.) Defendant Mark Sielfleisch is the sole shareholder of Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance and Repair, Inc. (Doc. 1 at ¶ 4; Doc. 35 at ¶ 4.) Defendant Lynette Guignard is Mark Sielfleisch's spouse and had supervisory authority for Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance Repair, Inc. (Doc. 1 at ¶ 20; Doc. 35 at ¶ 20;Doc. 46-3 at 7.)

### The Underlying State Case

Plaintiff issued workers compensation and employers' liability insurance policies to Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance and Repair, Inc., effective May 9, 2003 to May 9, 2004. (Doc. 1 at ¶ 8; Doc. 35 at ¶ 8.) On February 6, 2004, plaintiff cancelled the policy due to the insureds' failure to cooperate with its auditor. (Doc. 1 at ¶ 9; Doc. 35 at ¶ 9.) Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance and Repair, Inc. failed to pay unpaid and overdue premiums to plaintiff. (Doc. 1. at ¶ 11; Doc. 35 at ¶ 11.)

On July 28, 2009, plaintiff filed suit in Missouri state court against Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance and Repair, Inc. to recover the unpaid and overdue premiums. (Doc. 1 at ¶ 12; Doc. 35 at ¶ 1.) On December 9, 2010, the state court entered summary judgment in favor of plaintiff for the amount of $145.412.83. (Doc. 1 at ¶ 14; Doc. 35 at ¶ 14.) On December 27, 2011, the Missouri appellate court affirmed the trial court's decision. (Doc. 1 at ¶ 15; Doc. 35 at ¶ 15.)

After the commencement of the state suit, Mark H. Sielfleisch Roofing, Inc., MHS Roofing Maintenance and Repair, Inc., and the individual defendants did not tell the corporations' legal counsel that they actively conducted business nor did they authorize counsel to make such statements. (Doc. 41-2 at 5; Doc. 41-3 at 5.) Similarly, after 2004, the individual defendants did not tell plaintiff that the corporations actively conducted business. (Id.) During the proceedings of the state court case, Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance and Repair, Inc. were characterized as a small business family run by the individual defendants, including representations that "the result and the amount of the [Missouri] judgment are devastating for my clients" and "[t]his is college fund money for them." (Doc. 1 at ¶¶ 17-18; Doc. 35 at ¶¶ 17-18.) On February 15, 2011, counsel for Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance and Repair, Inc. informed plaintiff's counsel for the first time that "neither Mark H. Sielfleisch Roofing, Inc. or MHS Roofing Maintenance and Repair, Inc. are active businesses and have not been for several years." (Doc. 1 at ¶ 21; Doc. 35 at ¶ 21.)

The Corporations

James L. Rohlfing incorporated Mark H. Sielfleisch Roofing, Inc. (Doc. 41-3 at 2.) Mark Sielfleisch is the president of Mark H. Sielfleisch Roofing, Inc. and has been the sole shareholder and director since January 1, 1999. (Id.) He split his time between the field and office but did not perform roofing work. (Id.) Lynette Guignard has been the secretary since 1994 but has represented herself on documents as the president and vice president. (Doc. 41-2 at 2; Doc. 46-12 at 1; Doc. 46-20 at 6.) Since January 1, 1999, she has not been a shareholder and never was a director. (Doc. 41-2 at 2.) She was employed by Mark H. Sielfleisch Roofing, Inc. until she started work at Sielfleisch Roofing, Inc. (Id.) Mark Sielfleisch and Lynette Guignard shared personnel management duties. (Doc. 41-3 at 2.) The corporation performed built-up, hot tar roofing work and employed over fifty roofers during its operation. (Id. at 2-3.) Its customers were building owners. (Id. at 3.) At the end of 2004, it completed its contracts and ceased business operations. (Id. at 2.) By the end of 2005, it finished collecting accounts receivable. (Id.) It never conducted business as Sielfleisch Roofing, Inc. (Id. at 2.) Other than the disputed premiums, Mark H. Sielfleisch Roofing, Inc. had no outstanding liabilities. (Id. at 4.)

Mark B. Weinheimer incorporated MHS Roofing Maintenance and Repair, Inc. (Id.) Mark Sielfleisch has been the sole director and president of MHS Roofing Maintenance and

Repair, Inc. since its 1998 formation. (Id.) Lynette Guignard is the corporate secretary but has never served on the board of directors. (Doc. 41-2 at 2.) She has served as its registered agent since 2000. (Doc. 46-14.) She has also represented herself on documents as an owner and vice president. (Doc. 46-12 at 1; Doc. 46-13 at 3.) MHS Roofing Maintenance and Repair, Inc. was a non-union contractor that performed only roof repair projects with total values of less than $300.00. (Doc. 41-3 at 4.) Other than the disputed premiums, MHS Roofing Maintenance and Repair, Inc. had no outstanding liabilities. (Id.)

Matthew J. Smith incorporated Sielfleisch Roofing, Inc. (Doc. 41-2 at 1.) Lynette Guignard is an officer, owner, and sole director of Sielfleisch Roofing, Inc. (Id.) Mark Sielfleisch is an employee of Sielfleisch Roofing, Inc. and is identified in corporate documents as vice president, although he never acted in that capacity and did not know of his official status. (Doc. 41-3 at 1; Doc. 46-2 at 2.) He performs actual roofing work for Sielfleisch Roofing, Inc. in the field and does not work in the office. (Doc. 41-3 at 1.) From May 2, 2003 to February 16, 2010, Mark Sielfleisch acted as the corporation's registered agent. (Doc. 46-6 at 1.)

Sielfleisch Roofing, Inc. is a union contractor and performs single-ply roofing work. (Doc. 41-2 at 1.) It seeks building management companies as customers. (Id. at 3.) It used insurance providers not used by Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance Repair, Inc. and has separate bank accounts at a different bank. (Id. at 4.) It also has separate federal and state tax identification numbers and a separate account with the state Division of Employment Security. (Id. at 4-5.) When Sielfleisch Roofing, Inc. began work, the employees, subcontractors, and vendors of Mark H. Sielfleisch Roofing, Inc. were informed that Sielfleisch Roofing, Inc. was a new, independent company. (Id. at 3.) In the field, its employees wear shirts that display the company name. (Id.)

Lynette Guignard chose the corporate name of Sielfleisch Roofing, Inc. to capitalize on the reputation of the Sielfleisch name in the commercial roofing industry. (Doc. 46-3 at 7.) Its website stated, "In 1984 Mark established Sielfleisch Roofing and has since been providing St. Louis area customers with high level customer roofing services," and referred to "Owner Mark Sielfleisch." (Doc. 46-4 at 11; Doc. 46-5.) The website also displayed an image of a crane truck bearing the logo of Mark H. Sielfleisch Roofing, Inc. (Doc. 46-10 at 9.) At the end of 2004, Mark H. Sielfleisch Roofing, Inc. terminated its lease for the warehouse and storage space on Green Park Road in St. Louis County. (Doc. 41-2 at 5.) In January 2005, Sielfleisch Roofing,

Inc. entered into a lease for the same Green Park property. (Id.) Lynette Guignard conducted the business of Sielfleisch Roofing. Inc. at the Mark H. Sielfleisch Roofing, Inc. office. (Doc. 46-3 at 33.) Sielfleisch Roofing, Inc. also used the same office equipment, telephone number, accountant, and attorney. (Id. at 33-34.) For 2005, Mark H. Sielfleisch Roofing, Inc., MHS Roofing Maintenance Repair, Inc., and Sielfleisch Roofing, Inc. prepared their finances in a combined balance sheet. (Doc. 46-19.) Sielfleisch Roofing, Inc. has filed federal tax returns as a member of a controlled group of corporations. (Doc. 46-18 at 4.)

In May 23, 2001, Mark H. Sielfleisch Roofing, Inc. registered "Sielfleisch Roofing, Inc." as a fictitious name. (Doc. 46-7.) Sielfleisch Roofing, Inc. did not compensate Mark H. Sielfleisch Roofing, Inc. for the name. (Doc. 46-3 at 11.) On March 29, 2007, Mark H. Sielfleisch Roofing, Inc., MHS Roofing Maintenance Repair, Inc., and Sielfleisch Roofing, Inc. provided their accounts receivable as collateral to Concord Bank for the debt of the individual defendants. (Doc. 46-21.) On April 15, 2011, Mark H. Sielfleisch Roofing, Inc. provided four vehicles as collateral to Concord Bank for the debt of Sielfleisch Roofing, Inc. (Doc. 46-23.) During 2005 and 2006, Mark H. Sielfleisch Roofing, Inc. allowed Sielfleisch Roofing, Inc. to use four of its vehicles, including the crane truck, and required Sielfleisch Roofing, Inc. to maintain the vehicles, including paying insurance and personal property taxes but did not require monetary payment. (Doc. 41-2 at 4; Doc. 46-3 at 31.) Neither Mark H. Sielfleisch Roofing, Inc. nor MHS Roofing Maintenance Repair, Inc. entered into any written agreements with Sielfleisch Roofing, Inc. (Id.)

According to the payroll records for 2003 through 2005, several employees of Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance Repair, Inc. became employees of Sielfleisch Roofing, Inc. (Doc. 46-15.) Further, several employees worked at both Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance Repair, Inc., and several employees worked at both Mark H. Sielfleisch Roofing, Inc. and Sielfleisch Roofing, Inc., including Lynette Guignard. (Id.)

## V. DISCUSSION

Plaintiff seeks substantial compensatory damages, punitive damages, costs, and attorneys' fees from defendants. It alleges the doctrines of successor liability and piercing the corporate veil against defendant Sielfleisch Roofing, Inc. and further alleges against all defendants actual

and constructive fraudulent transfer, tortious interference with business expectancy, and negligent misrepresentation. Defendants move for summary judgment on all claims.

**A. Successor Liability**

Defendants argue that successor liability requires the transfer of substantially all assets from one corporation to another and that Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance Repair, Inc. transferred no assets to defendant Sielfleisch Roofing, Inc. Defendant further argues that factors indicating the continuation of Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance Repair, Inc. are not present.

"The general rule in Missouri is that when all of the assets of a corporation are sold or transferred the transferee is not liable for the transferor's debts and liabilities." Chem. Design, Inc. v. Am. Standard, Inc., 847 S.W.2d 488, 491 (Mo. Ct. App. 1993). "The rule is subject to four exceptions: 1) when the purchaser expressly or impliedly agrees to assume the debts and liabilities; 2) when the transaction amounts to a consolidation or merger of the corporation; 3) when the purchasing corporation is merely a continuation of the selling corporation; 4) when the transaction is entered into fraudulently in order to escape liability for the debts and liabilities." Id.

The majority rule requires the transfer of substantially all assets to establish successor liability, although Missouri courts have not addressed the issue. Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc., 336 F.3d 801, 803 (8th Cir. 2003). The record contains evidence indicating that Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance Repair, Inc. transferred substantially all assets to defendant Sielfleisch Roofing, Inc. For instance, defendant Mark H. Sielfleisch stated that Mark H. Sielfleisch Roofing, Inc. leased four vehicles to Sielfleisch Roofing, Inc. (Doc. 41-3 at 5); see Mo. Rev. Stat. § 4002A-103 (UCC Article 2A defining "lease" as a "transfer of the right to possession and use of goods"); Mo. Rev. Stat. § 428.009(12) (Uniform Fraudulent Transfer Act including leases in the definition of "transfer"). Additionally, defendant Sielfleisch Roofing, Inc.'s use of the same location, telephone number, similar name, and its website provide evidentiary support for the transfer of goodwill. (Doc. 46-3 at 33-34; Doc. 46-4 at 11; Doc. 46-5; Doc. 46-7; Doc. 46-10 at 9.)

For claims of successor liability under the mere continuation exception, Missouri courts consider, among other factors, the common identity of officers, directors, stockholders and

incorporators, the similarity of the business operations, the shared use of equipment, employees, and business names, and "whether notice has been given of the transfer to employees or customers." Roper Elec. Co. v. Quality Castings, Inc., 60 S.W.3d 708, 711 (Mo. Ct. App. 2001). The record contains evidence that the corporations shared officers and stockholders, had a similar but not identical line of work and business name, and used the same equipment and employees. (Doc. 41-2 at 1-2; Doc. 41-3 at 2,4; Doc. 46-2 at 2; Doc. 46-3 at 33; Doc. 46-7; Doc. 46-12 at 1; Doc. 46-13 at 3; Doc. 46-20 at 6.)

Because the record contains evidence of Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance Repair, Inc.'s transfer of substantially all assets to defendant Sielfleisch Roofing, Inc. and evidence in support of the mere continuation exception, defendants' motion for summary judgment on the successor liability plaintiff's claim is denied.

## B. Piercing the Corporate Veil

Defendants argue that the record does not support plaintiff's claim for piercing the corporate veil. To pierce the corporate veil, a plaintiff must show:

> 1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
>
> 2) Such control must have been used by the corporation to commit fraud or wrong, to perpetrate the violation of statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and
>
> 3) The control and breach of duty must proximately cause the injury or unjust loss complained of.

66, Inc. v. Crestwood Commons Redevelopment Corp., 998 S.W.2d 32, 40 (Mo. 1999).

Defendants argue that defendant Sielfleisch Roofing, Inc. does not own or control Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance Repair, Inc. The piercing the corporate veil claim is alleged solely against defendant Sielfleisch Roofing, Inc.; that is, the complaint seeks to disregard the corporate entity of Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance Repair, Inc. to hold Sielfleisch Roofing, Inc. liable for their debts. (Doc. 1 at 8.) The record contains no evidence that Sielfleisch Roofing, Inc. owned any stock or interest in those corporations.

However, "the lack of ownership is not in and of itself sufficient to prevent the piercing of the corporate veil." Collet v. Am. Nat. Stores, Inc., 708 S.W.2d 273, 285 (Mo. Ct. App. 1986) (citing Camelot Carpets, Ltd. V. Metro Distributing Co., 607 S.W.2d 746, 749 (Mo. Ct. App. 1980)); see Real Estate Investors Four, Inc. v. Am. Design Grp. Inc., 46 S.W.3d 51 (Mo. Ct. App. 2001). Rather, courts consider the following illustrative factors to evaluate the element of control:

(1) The parent corporation owns all of most of the capital stock of the subsidiary.

(2) The parent and subsidiary corporations have common directors or officers.

(3) The parent corporation finances the subsidiary.

(4) The parent corporation subscribes to all of the capital stock of the subsidiary or otherwise causes its incorporation.

(5) The subsidiary has grossly inadequate capital.

(6) The parent corporation pays the salaries and other expenses or losses of the subsidiary.

(7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.

(8) In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own.

(9) The parent corporation uses the property of the subsidiary as its own.

(10) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest.

(11) The formal legal requirements of the subsidiary are not observed.

Real Estate Investors Four, Inc., 46 S.W.3d at 56-57.

The record contains evidence of common ownership and officers. (Doc. 41-2 at 1-2; Doc. 41-3 at 2, 4; Doc. 46-2 at 2; Doc. 46-12 at 1; Doc. 46-13 at 3; Doc. 46-20 at 6.) It also contains evidence that defendant Sielfleisch Roofing, Inc. uses the property of Mark H. Sielfleisch Roofing, Inc., including the vehicles that were allegedly leased without written agreement or monetary compensation and Mark H. Sielfleisch Roofing, Inc.'s leased premises

prior to the lease of the same premises to defendant Sielfleisch Roofing, Inc. (Doc. 41-2 at 4; Doc. 46-3 at 31, 33.) Additionally, the record reflects that, on April 15, 2011, Mark H. Sielfleisch Roofing, Inc. allowed defendant Sielfleisch Roofing, Inc. to use its assets as loan collateral without consideration, indicating that Mark H. Sielfleisch Roofing, Inc. acted to serve the interests of defendant Sielfleisch Roofing, Inc. rather than its own. (Doc. 46-23.)

Next, "[t]he control exercised by that corporation must have been used in an improper manner." Collet, 708 S.W.2d at 286. "A court may disregard a separate corporation if the separateness is used to defraud a creditor." Weitz Co. v. MH Washington, 631 F.3d 510, 521 (8th Cir. 2011). The record contains evidence that Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance Repair, Inc. transferred assets, including the vehicles and goodwill, to defendant Sielfleisch Roofing, Inc. Moreover, a jury could reasonably infer that the transfer of these assets could have caused the inability to pay the Missouri state judgment due to the inability to use the assets further or due to the lack of adequate consideration and that defendant Sielfleisch Roofing, Inc. intended such consequences.

Accordingly, defendants' motion for summary judgment is denied regarding plaintiff's piercing the corporate veil claim.

## C. Uniform Fraudulent Transfer Act

Defendants argue that no transfers of assets occurred and the statute of limitations bars any claim under the Uniform Fraudulent Transfer Act. Mo. Rev. Stat. § 428.049 states:

A claim for relief or cause of action with respect to a fraudulent transfer or obligation under sections 428.005 to 428.059 is extinguished unless action is brought:

(1) Under subdivision (1) of subsection 1 of section 428.024, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;

(2) Under subdivision (2) of subsection 1 of section 428.024 or subsection 1 of section 428.029, within four years after the transfer was made or the obligation was incurred; or

(3) Under subsection 2 of section 428.029, within one year after the transfer was made or the obligation was incurred.

Plaintiff alleges that it first learned of the transfers in April 2011.  (Doc. 44 at 17.)  However, it commenced this action on August 28, 2012.  (Doc. 1.)  Further, plaintiff identifies no transfers between Mark H. Sielfleisch Roofing, Inc. or MHS Roofing Maintenance Repair, Inc. to the individual defendants occurring within four years of August 28, 2012.  The sole transfer identified by plaintiff occurring within the limitations period was on April 15, 2011, when Mark H. Sielfleisch Roofing, Inc. granted a security interest in four vehicles to Concord Bank to secure the debt of Sielfleisch Roofing, Inc.  (Doc. 46-23.)  The Uniform Fraudulent Transfer Act's broad definition of "transfer" includes the debtor's grant of a security interest in its assets.  Mo. Rev. Stat. § 428.009 ("every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance").

Accordingly, regarding plaintiff's Uniform Fraudulent Transfer Act claims, defendants' motion for summary judgment is denied with respect to the April 15, 2011 security interest but sustained regarding all other transfers due to the statute of limitations.[1]

## D. Tortious Interference with Business Expectancy

Defendants argue that no alleged asset transfer caused Mark H. Sielfleisch Roofing, Inc. or MHS Roofing Maintenance Repair, Inc. to not pay plaintiff.  Under Missouri law, "[a] claim for tortious interference with a contract or business expectancy requires proof of each of the following: (1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and, (5) damages resulting from defendant's conduct."  Cmty. Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n, 796 S.W.2d 369, 373 (Mo. 1990).  "A defendant induces a breach of contract if he actively and affirmatively takes steps to induce the breach and the contract would have been performed absent interference from the defendant."  Guidry v. Charter Communications, Inc., 269 S.W.3d 520, 535-36 (Mo. Ct. App. 2008).

Plaintiff's allegations focus on the effect of the transfer of assets on the breach of the insurance policy.  (Doc. 1 at ¶¶ 77-88.)  Thus, the question is whether Mark H. Sielfleisch

---

[1] The court notes that Concord Bank is not a party to this case.  However, the relief requested does not affect the interests of Concord Bank, and joinder is not required under Fed. R. Civ. P. 19(a).

Roofing, Inc. or MHS Roofing Maintenance Repair, Inc. would have paid the premiums on the insurance policy but for the transfer of assets.  The record contains evidence that Mark H. Sielfleisch Roofing, Inc. or MHS Roofing Maintenance Repair, Inc. allowed defendant Sielfleisch Roofing, Inc. to take their goodwill, including business name, use of their logo, telephone number, location, and office equipment and to use their vehicles without monetary consideration.  (Doc. 46-3 at 33-34.)  The record also contains evidence indicating that a genuine disagreement regarding the premiums caused the failure to pay.  (Doc. 41-3 at 4.)  Viewing the evidence in the light most favorable to plaintiff, a jury could reasonably infer that the transfer of goodwill and equipment and lack of consideration caused the corporations' failure to pay the insurance premiums by depriving them of assets.

Accordingly, with respect to plaintiff's claim of intentional interference with business expectancies, defendants' motion for summary judgment is denied.


**E. Negligent Misrepresentation**

Defendants argue that they owed no duty to inform plaintiff and that after 2004, they made no representations regarding the business activities of Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance and Repair, Inc.  Plaintiff responds that the duty to inform arose due to representations made by counsel for Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance and Repair, Inc.

Under Missouri law, "the elements of negligent misrepresentation are: (1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss."  Renaissance Leasing, LLC v. Vermeer Mfg. Co., 322 S.W.3d 112, 134 (Mo. 2010).  The sole indication in the record of any statement made by counsel for Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance and Repair, Inc. were representations that "the result and the amount of the [Missouri] judgment are devastating for my clients" and "[t]his is college fund money for them."  (Doc. 1 at ¶¶ 17-18; Doc. 35 at ¶¶ 17-18.)  The parties dispute whether such statements gave rise, as a partial disclosure, to a duty to

disclose the financial condition and business status of Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance and Repair, Inc.

However, even assuming that counsel for Mark H. Sielfleisch Roofing, Inc. and MHS Roofing Maintenance and Repair, Inc. acted as the agent of any defendant, counsel's statement did not occur within the course of defendants' business. Rather, counsel supplied the information within the context of ongoing litigation. Moreover, plaintiff does not allege that the counsel made such representations for guidance in any business transaction. Although Missouri courts have not addressed the issue, several courts have found negligent misrepresentation claims inapplicable for adverse parties during litigation. See Allen v. Steele, 252 P.3d 476, 483-84 (Colo. 2011) (holding that a civil law suit did not constitute a business transaction for purposes of negligent misrepresentation); McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests, 991 S.W.2d 787, 794 (Tex. 1999) ("a third party's reliance on an attorney's representation is not justified when the representation takes place in an adversarial context"); Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A., 750 P.2d 118, 122 (N.M. 1988) ("An adverse party cannot justifiably rely on the opposing lawyer to protect him from harm"); Beeck v. Kapalis, 302 N.W.2d 90, 97 (Iowa 1981) (concluding that the negligent misrepresentation does not apply to statements made during litigation).

Accordingly, with respect to plaintiff's claim of negligent misrepresentation, defendants' motion for summary judgment is sustained.

## VI. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the motion of defendants Sielfleisch Roofing, Inc., Mark Sielfleisch, and Lynette Guignard to dismiss (Doc. 38) is denied as moot.

**IT IS FURTHER ORDERED** that the motion of defendants Sielfleisch Roofing, Inc., Mark Sielfleisch, and Lynette Guignard for summary judgment against plaintiff Travelers Commercial Casualty Company (Doc. 40) is sustained in part and denied in part. The court grants partial summary judgment in favor of defendants on plaintiff's claim of actual and constructive fraudulent transfer. The court grants full summary judgment in favor of defendants on plaintiff's claim of negligent misrepresentation. Summary judgment is denied in all other respects.

**IT IS FURTHER ORDERED** that the action remains on the court's docket for a jury trial commencing March 10, 2014, at 9:00 a.m.  The final pretrial conference remains set for March 5, 2014 at 10:00 a.m.  The parties may have until February 28, 2014 to file their pretrial compliance papers.


_____/S/___David D. Noce_____
**UNITED STATES MAGISTRATE JUDGE**


Signed on February 18, 2014.